UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY C. BUCKLEY,

                Petitioner,

    vs.

GIBSON,

                Respondent.

No. 2:13-cv-515-GEB-EFB P

FINDINGS AND RECOMMENDATIONS

      Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him on January 20, 2009 in the Sacramento County Superior Court on two counts of attempted murder, with sentence enhancements for committing the offenses in association with a criminal street gang and use of a weapon.  He seeks federal habeas relief on the following grounds:  (1) the trial court violated his right to due process in admitting evidence to support the gang enhancement allegation; (2) the trial court violated his right to due process in refusing to bifurcate the gang enhancement allegation from the attempted murder charges; (3) the trial court violated his right to due process in failing to sever his trial from that of his co-defendant; (4) his right to a fair trial was violated by prosecutorial misconduct; and (5) the cumulative effect of errors at his trial violated his right to due process.  Upon careful consideration of the record and the applicable law, it is recommend that petitioner's application for habeas corpus relief be denied.

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

A jury convicted defendants Ricky Devon Taylor V and Rodney Charles Buckley, Jr., each of two counts of attempted murder, and found true the gang enhancement that these offenses were committed in association with a criminal street gang. (Pen.Code, §§ 664/187, 186.22, subd. (b)(1).) FN1 Buckley's sentence was further enhanced based on findings that he personally and intentionally discharged a firearm during both attempted murder offenses, causing great bodily injury. (§ 12022.53, subd. (d); two enhancements, each 25 years to life). These two firearm enhancements were also applied to Taylor based on his status as a principal in the attempted murders, his gang enhancement finding, and Buckley's (i.e., another principal's) firearm discharges. (§ 12022.53, subd. (e)(1)). FN2

FN1. Undesignated statutory references are to the Penal Code.

FN2. Buckley was sentenced on the gang enhancement. Taylor was not, because the prosecution did not inform Taylor in its charge that the gang enhancement would be imposed in addition to the section 12022.53 enhancement, and it did not ask the jury to make the findings legally required to do so. (See § 12022.53, subd. (e)(2).)

On appeal, the two defendants principally contend the evidence is insufficient to show a "criminal street gang," as required to sustain the gang enhancement. We agree and shall reverse the gang enhancement for both defendants. We reject, however, several contentions from Buckley, which allege, essentially, that his convictions should be reversed because he was prejudiced by the gang evidence in this case. FN3

FN3. Each defendant joins in the arguments presented by the other.

Our resolution results in a reduction in Buckley's aggregate (determinate and indeterminate) sentence from 72 years eight months to 59 years four months; and a reduction in Taylor's aggregate sentence from 61 years four months to 11 years four months. This discrepancy in the sentence reductions results from the following: (1) Buckley's sentence under the gang enhancement (13 years four months; § 186.22, subd. (b)) is vacated, but his enhancement sentence of 50 years to life remains intact on the two enhancements for personally and intentionally discharging a firearm, causing great bodily injury, during both attempted murder offenses (i.e., each of these two enhancements is 25 years to life; § 12022.53, subd .(d)); (2) Taylor's sentence of 50 years to life on these two enhancements is vacated because these enhancements were based vicariously on his gang enhancement finding, a finding we reverse (§ 12022.53, subd. (e)(1)). We also correct a clerical

error in Taylor's abstract of judgment concerning his convictions. As so modified, we shall affirm the judgments.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Before the Shooting**

On November 30, 2006, then–17–year–old Taylor lived in an apartment with his girlfriend, Larryssa Way, and another couple, Sara Scott and Rodney Alexander.

Three or four days before, Scott had written the name "Gerald" on Way's back as a joke. Gerald was Way's boyfriend prior to Taylor. This inscription did not sit well with Taylor, and various verbal and physical confrontations ensued between Taylor and Scott/Alexander on November 30.

These confrontations prompted Scott and Alexander to leave the apartment and go to the home of Scott's father, Alfred O'Neal, one of the two victims here. As she was leaving the apartment, Scott gathered some belongings, including a nine-millimeter handgun, which O'Neal had given her because of rapes in the area; Way yelled, "No, Sara [Scott], no guns, no guns," and that set Taylor off further. Taylor yelled to the departing Scott and Alexander, "nigger, it's gun play," and apparently added, "The North Highlands Gangster Crips will all be up in here."

Scott told her father, O'Neal, what had happened at the apartment. Alberto Richard, Scott's "cousin" and the second victim here, was at O'Neal's too.

Way later called Scott at O'Neal's, stating that Scott needed to return to the apartment because Taylor was messing up her property. (At trial, Scott identified a picture of her TV set, as well as a poster – each bearing the inscription "My nigga's gonna kill you" – which were not so adorned before she and Alexander had left the apartment.)

Richard, who knew Taylor, offered to go to the apartment and get Scott's things. (Richard identified himself and Taylor as North Highlands Gangster Crip gang members.)

As O'Neal and Richard were about to leave for the apartment in O'Neal's van, Scott asked O'Neal if he wanted the nine-millimeter handgun. O'Neal initially declined, but then changed his mind and took the weapon.

**The Gun Battle**

At the apartment, Richard knocked on the door while O'Neal waited in the van. Taylor greeted Richard at gunpoint with a handgun. Buckley, holding a pistol-grip shotgun nearby, then pat-searched the unarmed Richard. Richard was taken aback – wondering why someone with whom he had just had Thanksgiving dinner (Taylor) was holding a gun on him. (That dinner, in fact, had been at

3

O'Neal's house, with Way and Taylor, Scott and Alexander, Richard and perhaps Buckley, attending.)

After Richard explained his presence and stated that his uncle was outside waiting in the van, nerves soothed and guns were withdrawn.

A few minutes later, however, another knock was heard on the door and anxiety gripped defendants anew. Richard said it was probably O'Neal, which it was. While waiting in the van, O'Neal had received a call from Way who said that Taylor and Richard were arguing.

Defendants "greeted" O'Neal in the same manner they had Richard, with guns drawn. O'Neal stated that Taylor added the salutation, "North Highlands Gangster Crip," and that Taylor also said "he'd lay [O'Neal] down." O'Neal was aghast, having just had Taylor over for dinner. But O'Neal was not as solicitous as Richard. O'Neal refused to be searched, grabbed the barrel of Taylor's gun, and the two of them began to wrestle (O'Neal was armed with the nine-millimeter).

According to Richard, Taylor broke free from O'Neal and then began firing at O'Neal from the kitchen. O'Neal returned fire. At this point, Buckley began firing at O'Neal. When Richard noticed that Buckley had a clear shot at O'Neal, he stepped in between the two of them, saying "no" and holding his hands up in a "do not shoot" pose. Buckley shot Richard in the chest. Richard heard two distinct shots from the shotgun; a third shot attempt malfunctioned.

According to O'Neal, as he and Taylor began to wrestle, he (O'Neal) heard a shotgun blast and heard Richard say "I'm shot." As O'Neal and Taylor struggled, O'Neal heard another "boom" and felt a shotgun blast hit him in his left flank.

O'Neal and Richard managed to escape the apartment through a flurry of bullets unleashed by O'Neal.

O'Neal's shotgun injury left him with a limp. Richard's shotgun injuries were very serious, threatening his heart. Buckley sustained gunshot wounds to his left arm and chest, and Taylor was hit as well.

**Gang Evidence**

A gang detective, Jamin Martinez, testified as an expert on the issue of the gang enhancement. We will set forth the pertinent parts of his testimony when we discuss the issue of this enhancement's evidentiary sufficiency.

4

1   **Defense**

2   Buckley rested without presenting witnesses.

3   The highlight of Taylor's case was a police officer who interviewed
    O'Neal in the hospital shortly after the shooting.  O'Neal did not
4   mention to the officer that Taylor had made any gang-related
    statements; or that the two defendants were wearing blue bandannas
5   or rags on their faces, as O'Neal had testified to at trial – in a
    manner inconsistent with Richard.

6

7   **Prosecution and Defense Theories of the Case**

8   The prosecution's theory was that this was a gang-related
    confrontation and shooting to avenge the disrespect shown to
9   Taylor by Scott's inscription of "Gerald" on the back of Taylor's
    girlfriend, Way.

10  The defense theory was self-defense and defense of another, in
    which the shooting arose merely out of a personal dispute among
11  roommates and was initiated by O'Neal's pistol-packing support for
    his daughter, Scott.

12

13  ECF No. 16-1 at 2-8.

14      After the California Court of Appeal affirmed his judgment of conviction, petitioner filed

15  a petition for rehearing in the Court of Appeal.  Resp't's Lodg. Doc. 5.  On September 21, 2011,

16  the Court of Appeal summarily denied that petition.  Resp't's Lodg. Doc. 6.  Petitioner

17  subsequently filed a petition for review in the California Supreme Court.  Resp't's Lodg. Doc. 7.

18  That petition was also summarily denied.  Resp't's Lodg. Doc. 8.

19      On July 13, 2013, petitioner filed a petition for writ of habeas corpus in the Sacramento

20  County Superior Court.  Resp't's Lodg. Doc. 9.  On August 23, 2012, the Superior Court denied

21  that petition in a reasoned decision on the merits of petitioner's claims.  Resp't's Lodg. Doc. 10.

22  On November 21, 2012, petitioner filed a petition for writ of habeas corpus in the California

23  Court of Appeal.  Resp't's Lodg. Doc. 11.  That petition was summarily denied.  Resp't's Lodg.

24  Doc. 12.  On March 7, 2013, petitioner filed a petition for writ of habeas corpus in the California

25  Supreme Court.  Resp't's Lodg. Doc. 13.  On May 1, 2013, the Supreme Court denied that

26  petition with a citation to *In re Waltreus*, 62 Cal.2d 218, 225 (1965) (habeas corpus cannot serve

27  as a second appeal).  Resp't's Lodg. Doc. 14.

28  /////

5

1       Petitioner filed his federal habeas corpus petition in this court on June 17, 2013.

2  **II.  Standards of Review Applicable to Habeas Corpus Claims**

3       An application for a writ of habeas corpus by a person in custody under a judgment of a

4  state court can be granted only for violations of the Constitution or laws of the United States.  28

5  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6  application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

7  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

8  2000).

9       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

10  corpus relief:

11       An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall not
12  be granted with respect to any claim that was adjudicated on the
merits in State court proceedings unless the adjudication of the
13  claim -

14       (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
15  determined by the Supreme Court of the United States; or

16       (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
17  State court proceeding.

18  For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

19  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

20  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

21  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

22  Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

23  what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*,

24  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

25  precedent may not be "used to refine or sharpen a general principle of Supreme Court

26  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall*

27  *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

28  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

6

1  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

2  be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

3  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

4  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

5        A state court decision is "contrary to" clearly established federal law if it applies a rule

6  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

7  precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

8  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

9  writ if the state court identifies the correct governing legal principle from the Supreme Court's

10  decisions, but unreasonably applies that principle to the facts of the prisoner's case. [1] *Lockyer v.*

11  *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

12  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

13  court concludes in its independent judgment that the relevant state-court decision applied clearly

14  established federal law erroneously or incorrectly.  Rather, that application must also be

15  unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

16  (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

17  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

18  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

19  'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

20  *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

21  652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

22  court, a state prisoner must show that the state court's ruling on the claim being presented in

23  federal court was so lacking in justification that there was an error well understood and

24  comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

25  S. Ct. at 786-87.

26  _____

27  [1]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis*, 384 F.3d at

28  638.

1    If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

2    court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

3    527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

4    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

5    2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

6    de novo the constitutional issues raised.").

7    The court looks to the last reasoned state court decision as the basis for the state court

8    judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

9    the last reasoned state court decision adopts or substantially incorporates the reasoning from a

10   previous state court decision, this court may consider both decisions to ascertain the reasoning of

11   the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

12   a federal claim has been presented to a state court and the state court has denied relief, it may be

13   presumed that the state court adjudicated the claim on the merits in the absence of any indication

14   or state-law procedural principles to the contrary."  *Richter*, 131 S. Ct. at 784-85.  This

15   presumption may be overcome by a showing "there is reason to think some other explanation for

16   the state court's decision is more likely."  *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

17   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

18   but does not expressly address a federal claim, a federal habeas court must presume, subject to

19   rebuttal, that the federal claim was adjudicated on the merits.  *Johnson v. Williams*, ___ U.S. ___,

20   ___, 133 S.Ct. 1088, 1091 (2013).

21   Where the state court reaches a decision on the merits but provides no reasoning to

22   support its conclusion, a federal habeas court independently reviews the record to determine

23   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

24   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

25   review of the constitutional issue, but rather, the only method by which we can determine whether

26   a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

27   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

28   reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A. Evidence in Support of Gang Enhancement Allegation

Petitioner's first claim for relief is that the trial court's admission of evidence regarding gang culture and activities to support the attempted murder charges and the gun enhancement allegations rendered his trial fundamentally unfair, in violation of his Fourteenth Amendment right to due process. ECF No. 10 at 27-29. Petitioner points out that the California Court of Appeal reversed his conviction on the gang enhancement allegations. He states that he is not a gang member.[2] Therefore, according to petitioner, the gang evidence "couldn't show any

---

[2] The California Court of Appeal reversed petitioner and Taylor's conviction on the gun enhancement allegation for the following reason:

> While the prosecution's gang expert mentioned the primary activities of "The Crips," he did not set forth (1) the primary activities of the North Highlands Gangster Crips (NHGC), or (2) any legally sufficient connection between "The Crips" and the NHGC.

ECF No. 16-1 at 8.

1    relevance to petitioner," but was only relevant to the charges against Taylor, who was a gang

2    member.  *Id.* at 27-28.  Petitioner contends that the gang evidence allowed the jury to find him

3    guilty based solely on "guilt by association" with Taylor, a childhood friend.  *Id.*

4          Petitioner also argues that the evidence supporting the gang enhancement allegations

5    should not have been admitted into evidence because it was insufficient to demonstrate that

6    NHGC was a "street gang" and had the unfair effect of providing support for the prosecutor's

7    argument that the shootings were motivated by gang membership and not by the self-defense.  He

8    argues, "the evidence used to prove the gang enhancement is prejudicial, and denies him a fair

9    oppurtunity [sic] for the jury to assess if he acted with criminal intent or for the purpose of self-

10   defense/defense of others."  *Id.*  In essence, petitioner is arguing that because the gang evidence

11   was ultimately unable to support the gang enhancement allegation, in hindsight it was unfair to

12   admit it for any purpose.

13         **1.  State Court Decisions**

14         The California Court of Appeal addressed these arguments as part of its analysis of

15   petitioner's claim that the trial court violated his right to a fair trial in refusing to bifurcate the

16   gang allegations from the attempted murder charges.  That court concluded that the gang evidence

17   was relevant to the substantive crimes, as well as to other issues at trial such as the "thoughts and

18   actions of all the participants involved," and was therefore properly admitted even though the

19   prosecutor ultimately failed to prove that NHGC fell within the legal definition of a "street gang."

20   Resp't's Lodg. Doc. 1 at 15-16.

21         In his petition for a writ of habeas corpus filed in the California Superior Court, petitioner

22   claimed, as he does in the instant petition, that the admission into evidence of the gang-related

23   evidence violated his right to a fair trial, especially in light of the fact that his conviction on the

24   gang enhancement was later reversed by the Court of Appeal.  The Superior Court denied that

25   claim, reasoning as follows:

26             The court notes that in its decision on appeal of the judgment in
     Case No. 06F10601, the Third District Court of Appeal had
27             reversed a Penal Code § 186.22(b)(1) gang enhancement that the
     jury had found true at trial, on the ground of insufficiency of the
28             evidence, because the prosecutor had failed to elicit testimony from

the prosecution's gang expert that the NHGC gang, as opposed to the Crips gang, had the requisite "primary activities" to establish that element of the gang enhancement. The Third District also held that the trial court did not err in refusing to bifurcate the trial of the gang enhancement, and did not err in refusing to sever the trials of petitioner and his codefendant. The claims in the instant habeas petition will be reviewed below, in light of this procedural history.

Petitioner first claims that because the gang enhancement was unsupported, it had a prejudicial spillover effect on the charged attempted murders and their attaching Penal Code § 12022.53(d) gun enhancements.

A related claim was raised and rejected on appeal, that the trial court had erred in refusing to bifurcate the gang enhancement from the attempted murder charges. The Third District reasoned:

"There was sufficient gang evidence for the prosecution to charge the gang enhancement against Buckley, and to make the theory of its case gang based. Furthermore, as the trial court reasoned in denying bifurcation, the gang issue affected "both the thoughts and the actions of all the participants involved" in the attempted murder offenses; the court provided the following examples: Why did O'Neal arm himself? Why did Taylor refer to his gang affiliation in the midst of the incident? How did the alleged victims' knowledge of Taylor's gang participation affect their responses during the incident? And, why did Richard deny knowing the identity of the assailants in his initial statements to the police? Without the gang evidence, the trial court observed, "the trier of fact [would be] blinded . . . to possible key motivations on the part of both the defendants and the alleged victims . . . ." And, as the trial court noted, the jury would be instructed specifically on the limited purposes of the gang evidence and how to handle it. [¶] In short, the gang evidence here was tied to the evidence of the substantive offenses. The trial court did not abuse its discretion in refusing to bifurcate the gang enhancement."

At trial, the People made a technical mistake in their attempt to prove that the NHGC was a "criminal street gang" under the meaning of Penal Code § 186.22, in failing to prove that the NHGC had certain "primary activities" so as to meet that particular element of the charged enhancement. Instead, the People elicited testimony that the Crips had the requisite "primary activities" and neglected to elicit testimony to show that the NHGC was a subset of the Crips. That was the only reason that the Third District, on the appeal of the judgment, found that the evidence was insufficient to support the true finding on the Penal Code § 186.22(b)(1) gang enhancement. That the prosecutor made such a technical mistake, however, does not establish that petitioner was wrongly tried for the attempted murders, the gun enhancements, and the gang enhancement together in the same trial. As concluded by the Third District on the related argument of error in failure to bifurcate, the gang evidence was tied to the evidence of the substantive offenses. The prosecutor was entitled to attempt to prove the elements of the gang enhancement at the same trial for the attempted murders and

attaching gun enhancements, and there was no reason for the trial court, before trial, to have believed that the prosecutor would be unable to prove the gang enhancements.  It simply cannot be the law that whenever the People made a technical mistake in attempting to prove one minor aspect of a certain charge, when the facts surrounding that charge are inextricably entwined with those surrounding the other charged offenses, so as to necessarily result in a prejudicial spillover effect requiring reversal of the convictions on the other offenses.

Nor does petitioner demonstrate that there was any spillover effect from the People's technical mistake.  The gang evidence would have remained relevant and admissible at the trial on the attempted murders and attaching gun enhancements, because the gang evidence was tied to the evidence of the substantive offenses.  That the gang was not shown to technically meet a legal definition of a "criminal street gang," such that additional penalties under Penal Code § 186.22(b)(1) could not apply, did not mean that the jury could not consider the gang evidence at all.  The jury was free to consider evidence that there was a gang called NGHC that was inextricably entwined with the criminal conduct, regardless of whether that gang met the statutory definition of a "criminal street gang."  It is not reasonably likely that the gang evidence would have been excluded even if the trial court had known that the gang was not going to be shown to technically qualify as a "criminal street gang" under the meaning of Penal Code § 186.22.  As such, petitioner fails to set forth a prima facie case for relief, requiring denial of the claim (*In re Bower* (1985) 38 Cal.3d 865).

ECF No. 16-2 at 2-4.

## 2. <u>Applicable Law</u>

Denial of due process in a criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice . . . .  [W]e must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."  *Lisenba v. California*, 314 U.S. 219, 236 (1941).  In federal court, a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the jury may draw from the ///// evidence."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Evidence must "be of

/////

12

1  such quality as necessarily prevents a fair trial."  *Id.* (quoting *Kealohapauole v. Shimoda*, 800

2  F.2d 1463 (9th Cir. 1986)).

3                   Even so, as the Ninth Circuit has observed:

4            The Supreme Court has made very few rulings regarding the
admission of evidence as a violation of due process.  Although the

5  Court has been clear that a writ should be issued when
constitutional errors have rendered the trial fundamentally unfair

6  (citation omitted), it has not yet made a clear ruling that admission
of irrelevant or overtly prejudicial evidence constitutes a due

7  process violation sufficient to warrant issuance of the writ.

8

9  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

10  clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

11  the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

12  laid out by the Supreme Court."  *Id.  See also Greel v. Martel*, No. 10-16847, 472 F. App'x 503,

13  504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established

14  federal law that admitting prejudicial evidence violates due process.").

15                  **3.  <u>Analysis</u>**

16        In light of the authorities cited above, the state court's rejection of petitioner's claim that

17  the trial court violated his right to due process in admitting evidence of gang activities to support

18  the charges against petitioner and Taylor does not support habeas relief under AEDPA.  There is

19  no "clearly established federal law" that the federal constitution is violated by the admission into

20  evidence of gang affiliation in a case where motivation is at issue and gang evidence is relevant to

21  other issues in the case.  *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (rejecting petitioner's

22  claim that the trial court violated his right to due process in allowing the opinion testimony

23  because it improperly intruded upon the province of the jury).

24  /////

25  /////

26  /////

27  /////

28  /////

1    This court also concludes that the admission of the gang evidence did not render

2  petitioner's trial fundamentally unfair.  The gang enhancement with which petitioner was charged

3  provides that additional punishment shall be imposed on:

4
>           any person who is convicted of a felony committed for the benefit
5           of, at the direction of, or in association with any criminal street
>           gang, with the specific intent to promote, further, or assist in any
6           criminal conduct by gang members . . .

7  Cal. Penal Code § 186.22(b)(1).  The prosecution's theory of guilt against petitioner was that,

8  while he was not a gang member, his actions were performed "in association" with gang member

9  Taylor.  Reporter's Transcript on Appeal (RT) at 50, 74.  Evidence regarding the behavior

10  patterns of gang members and the possible link between petitioner's actions and the gang

11  affiliation of Taylor was therefore relevant to the prosecutor's entire theory of the case.  As noted

12  by the California Court of Appeal, this evidence was also relevant to explain the actions of all the

13  participants in the shooting.  That petitioner was acting in concert with Taylor in order to advance

14  the objectives of Taylor's gang, whether or not that gang was technically a "street gang," was a

15  permissible inference the jury could draw from the gang evidence.  *See Jammal*, 926 F.2d at 920.

16  Accordingly, the evidence was properly admitted for this purpose.  The court also notes that any

17  prejudice to petitioner from the admission of the gang-related evidence was mitigated by the

18  following jury instructions:

19
>           You may consider evidence of gang activity only for the limited
20          purpose of deciding whether the defendant acted with the intent,
>           purpose, and knowledge that are required to prove the gang-related
21          enhancement charged or whether the defendant had a motive to
>           commit the crimes charged.

22
>           You may not consider this evidence for any other purpose.  You
23          may not conclude from this evidence that the defendant is a person
>           of bad character or that he has a disposition to commit crime.

24  RT at 816.

25
>           During the trial, certain evidence was admitted for a limited
26          purpose.  You may consider this evidence only for that purpose and
>           for no other.

27  *Id.* at 792.  It is presumed that the jurors followed these instructions.  *Richardson v. Marsh*, 481

28   U.S. 200, 211 (1987).

14

1    Petitioner has also failed to demonstrate that the evidence relating to gang activity

2    prevented the jurors from considering and evaluating his defense of self-defense on its own

3    merits.  Petitioner's speculation to that effect, without more, is insufficient to establish

4    entitlement to federal habeas relief.

5    This court may not second-guess state evidentiary rulings, except for the limited purpose

6    of ascertaining whether the admission of evidence was so lacking in a nexus to the issues of the

7    case that the trial was rendered fundamentally unfair, *see Jammal,* 926 F.2d at 920, *Dowling v.*

8    *United States*, 493 U.S. 342, 352–53 (1990), *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir.

9    1985), or that the evidence bore no relationship to the issues being tried, *see Dawson v.*

10   *Delaware*, 503 U.S. 159, 163–65 (1992).  Neither exception applies to the admission of the gang

11   expert testimony in this case.  Accordingly, petitioner is not entitled to federal habeas relief on

12   this claim.

13   **B.  Bifurcation of Charges**

14   In petitioner's next ground for relief, he claims that the trial court violated his right to due

15   process when it denied his motion to bifurcate the trial of the gang enhancement allegations from

16   the trial on the underlying attempted murder charges.  ECF No. 10 at 30-32.  He argues that he

17   was "unable to have guilt or innocence determined on attempted murder without suspicion of it

18   being gang related."  *Id.* at 30.  He explains:

19           The evidence that legally hold petitioner in custody today is
             circumstantial.  This evidence is influenced, however, by the gang
20           enhancement evidence (which has been reversed).  Petitioner has
             not received a fair trial or due process for his substansive [sic]
21           offense, due to this influence of the gang enhancement; which he
             fore-warned the courts he wouldn't.  Prejudicial spillover took
22           place in the attempted murder preventing the jury from seeing if
             petitioner self-defense theory was true.
23
     *Id.* at 31.  Petitioner also argues that the trial court's refusal to bifurcate the trial violated the
24
     doctrine of "retroactive misjoinder."  *Id.*[3]
25

26       [3]  Retroactive misjoinder "arises where joinder of multiple counts was proper initially, but
     later developments – such as a district court's dismissal of some counts for lack of evidence or an
27   appellate court's reversal of less than all convictions – render the initial joinder improper; to
     invoke retroactive misjoinder, a defendant must show compelling prejudice such as prejudicial
28   spillover." (internal citation omitted.)  *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir.

                                                        15

1          The California Court of Appeal rejected these arguments, reasoning as follows:

2                    Buckley contends the trial court denied him due process by refusing
          to bifurcate the gang enhancement from the attempted murder
3          charges.  We disagree.

4                    Our standard of review is abuse of discretion.  (§ 954; *People v..
          Hernandez* (2004) 33 Cal.4th 1040, 1044.)  The trial court did not
5          abuse its discretion here.

6                    It is true there was no evidence that Buckley was a gang member.
          But the gang enhancement statute does not require such
7          membership.  (§ 186.22, subd. (b)(1); *see People v. Villalobos*
          (2006) 145 Cal .App.4th 310, 321–322.)
8
                    There was sufficient gang evidence for the prosecution to charge
9          the gang enhancement against Buckley, and to make the theory of
          its case gang based.  Furthermore, as the trial court reasoned in
10          denying bifurcation, the gang issue affected "both the thoughts and
          the actions of all the participants involved" in the attempted murder
11          offenses; the court provided the following examples: Why did
          O'Neal arm himself?  Why did Taylor refer to his gang affiliation in
12          the midst of the incident?  How did the alleged victims' knowledge
          of Taylor's gang participation affect their responses during the
13          incident?  And, why did Richard deny knowing the identity of the
          assailants in his initial statements to the police?  Without the gang
14          evidence, the trial court observed, "the trier of fact [would be]
          blinded . . . to possible key motivations on the part of both the
15          defendants and the alleged victims . . . ."  And, as the trial court
          noted, the jury would be instructed specifically on the limited
16          purposes of the gang evidence and how to handle it.

17                    In short, the gang evidence here was tied to the evidence of the
          substantive offenses.  The trial court did not abuse its discretion in
18          refusing to bifurcate the gang enhancement.

19     ECF No. 16-1 at 16-17.

20          Petitioner also raised this claim in his subsequently filed state habeas petition.  The

21     California Superior Court rejected the claim on procedural grounds and on the merits, reasoning

22     as follows:

23                    Petitioner next claims that his rights to a fair trial and to present a
          defense were violated by the trial court's refusal to bifurcate the
24          trial on the gang enhancement from the trial on the rest of the
          charges.
25
                    The claim is procedurally barred on state habeas corpus, because it
26          was raised and rejected on appeal (*In re Waltreus* (1965) 62 Cal.2d
          218; *reaffirmed in In re Harris* (1993) 5 Cal.4th 813, 829).  The
27

28     2009).

                                                16

1    only exceptions to this procedural bar are: (1) if the claim is based
     on constitutional error that is both clear and fundamental, and that
2    strikes at the heart of the trial process; (2) if the claim is based in
     ineffective assistance of counsel terms regarding facts that could
3    have been but were not placed on the record; (3) if the court lacked
     fundamental jurisdiction over the petitioner or the subject matter;
4    (4) if the court acted in excess of its jurisdiction and the issue is
     strictly a legal one not requiring a redetermination of the facts
5    underlying the claim; (5) there has been a change in the law
     affecting the petitioner (*Harris, supra*, 5 Cal.4th 813, 834, 834 fn.
6    8, 836, 840-841, 841); or (6) if the claim is that the sentence is
     unauthorized, as an unauthorized sentence may be corrected at any
7    time (*People v. Welch*, (1993) 5 Cal.4th 228; *Harris, supra*, 5
     Cal.4th 813, 842; *People v. Serrato* (1973) 9 Cal.3d 753, 763,
8    *overruled on other grounds in People v. Fosselman* (1983) 33
     Cal.3d 572, 583 fn. 1).  As petitioner does not show that any such
9    exception applies to his claim, it is barred from habeas review.  Nor
     does petitioner set forth any reason why this court should conclude
10   any differently than did the Third District on the appeal, even if the
     claim were not barred.  The jury in Case No. 06F10601 believed the
11   evidence presented that petitioner had acted to further the NHGC,
     as evidenced by the jury's true finding on the gang enhancement;
12   all that was lacking was a showing that NHGC had certain "primary
     activities" so as to meet that one lone element of being a "criminal
13   street gang" under the meaning of Penal Code § 186.22, a mere
     technical deficiency precluding the true finding of the Penal Code §
14   186.22(b)(1) enhancement but not precluding the admissibility of
     the gang evidence.  Thus, even if the bifurcation claim were not
15   barred on habeas review, it would be denied.

16   ECF No. 16-2 at 4.

17        The United States Supreme Court has not determined that a criminal defendant has a

18   federal constitutional right to bifurcation.  *See Spencer v. Texas*, 385 U.S. 554, 565-66 (1967)

19   ("Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court

20   as a matter of constitutional law, or even as a matter of federal procedure"); *Marshall v.*

21   *Lonberger*, 459 U.S. 422, 438 n.6 (1983) (reaffirming *Spencer*).  "The simultaneous trial of more

22   than one offense must actually render petitioner's state trial fundamentally unfair and hence,

23   violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate."

24   *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991) (internal quotation marks and

25   citation omitted).  S*ee also United States v. Lane*, 474 U.S. 438, 446 n.8 (1986) ("misjoinder

26   would rise to the level of a constitutional violation only if it results in prejudice so great as to

27   deny a defendant his Fifth Amendment right to a fair trial"); *Comer v. Schiro*, 480 F.3d 960, 985

28   (9th Cir. 2007) (in the context of the joinder of counts at trial, habeas relief will not be granted

17

1   unless the joinder actually rendered petitioner's state trial fundamentally unfair and therefore

2   violative of due process).

3        "In evaluating prejudice, the [federal habeas court] focuses particularly on cross-

4   admissibility of evidence and the danger of 'spillover' from one charge to another, especially

5   where one charge or set of charges is weaker than another." *Davis v. Woodford*, 384 F.3d 628,

6   638 (9th Cir. 2003). Undue prejudice also exists "whenever joinder of counts allows evidence of

7   other crimes to be introduced in a trial where the evidence would otherwise be inadmissible."

8   *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000). Petitioner bears the burden of proving

9   that he is entitled to federal habeas relief on this ground. *Davis*, 384 F.3d at 638.

10       As the California Court of Appeal and the trial court correctly observed, in this case the

11   gang evidence was admissible to show the possible intent and motive of all participants in the

12   events and was integral to the prosecution theory of the case. This fact reduced the possibility of

13   prejudice. *See Comer*, 480 F.3d at 985 (cross-admissibility of evidence significantly reduces

14   potential prejudice). Further, as noted by the California Court of Appeal, the gang evidence

15   served to explain otherwise inexplicable events and actions and put the events in perspective. *See*

16   *United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000) (gang evidence admissible when

17   relevant to a material issue). The fact that the prosecutor conceded petitioner was not a gang

18   member, in addition to the jury instructions on the limited purpose of the gang evidence, lessened

19   any potential prejudice to petitioner from the admission of this evidence. For these reasons,

20   petitioner has not established that the state trial court's refusal to bifurcate the trial of the gang

21   allegations from the underlying charges rendered his trial fundamentally unfair. *Davis*, 384 F.3d

22   at 638. Thus, federal habeas relief is not warranted on this claim. *See Cisneros v. Harrington*,

23   Nos. CV 10-574-DMG (OP) & CV 09-6716 DMG (OP), 2012 WL 3150610, at *14-15 (C.D. Cal.

24   Jan. 31, 2012) (rejecting similar claim to federal habeas relief). [4]

25 ──────────────
          [4]   In California, a trial court has discretion to bifurcate trial of a criminal street gang
26   enhancement allegation. *People v. Hernandez*, 33 Cal.4th 1040, 1049–51 (2004). However,
     bifurcation is unnecessary where the evidence supporting the gang enhancement allegation is
27   admissible at a trial on the issue of guilt. *Id.* at 1049–50. Moreover, even if some of the evidence
     offered to prove the enhancement allegation is inadmissible at the trial on the charged offense, a
28   court may deny bifurcation where additional factors favor a single trial. *Id.* at 1050. The
     defendant bears the burden "to clearly establish that there is a substantial danger of prejudice

1       **C.  Trial Severance**

2              In his next claim for relief, petitioner argues that the trial court's failure to sever his trial

3    from Taylor's trial violated his right to due process because of "the disparity of the weight of

4    evidence and guilt by association, causing confusion and prejudice."  ECF No. 10 at 33.  He

5    contends that there was no evidence demonstrating "why or how petitioner's shooting (which was

6    claimed to had been done in self-defense) supports Taylor's motive without using guilt by

7    association."  ECF No. 20 at 13.

8              The California Court of Appeal rejected these arguments, reasoning as follows:

9              Buckley contends the trial court erred in refusing to sever his case
               from Taylor's.  Buckley argues he was improperly subjected to
10             "guilt by association" with Taylor, even though he (Buckley) was
               not a gang member.  We disagree.
11
               Our standard of review is, once again, abuse of discretion.  (*People
12             v. Coffman and Marlow* (2004) 34 Cal.4th 1, 41 (*Coffman*).)  And,
               once again, we find the trial court did not so act.
13
               Section 1098 expresses a legislative preference for jointly trying
14             defendants jointly charged with a crime.  (*Coffman, supra*, 34
               Cal.4th at p. 40.)  When defendants are charged with "'common
15             crimes involving common events and victims,'" as here, a "classic
               case" for joint trial is presented.  (*Coffman*, at p. 40.)
16
               Buckley was legitimately charged with the same crimes and gang
17             enhancement as Taylor.  Indeed, the evidence showed that Buckley
               was the actual shooter in the two charged attempted murders, and
18             that Buckley and Taylor acted in a coordinated fashion.  As noted in
               the preceding part of this opinion, Buckley need not have been a
19             gang member to be liable for the gang enhancement; and the jury
               would be instructed as to the limited purposes of the gang evidence.
20             (§ 186.22, subd. (b)(1).)

21             Coupling these observations with the preceding part on bifurcation,
               we conclude the trial court did not abuse its discretion in refusing to
22             sever defendants' cases for trial.

23   ECF No. 16-1 at 17-18.

24   /////

25   _____

26   requiring that the charges be separately tried."  *Id.*(citation omitted).  To the extent petitioner is
     arguing that the trial court abused its discretion under state law in denying his request for
27   bifurcation, his claim is not cognizable in these federal habeas proceedings.  *Estelle*, 502 U.S. at
     67-68.  *See also Ramirez v. Almager*, 619 F. Supp. 2d 881, 899–900 (C.D. Cal. 2008) (the failure
28   to bifurcate a trial in connection with testimony relevant to a gang enhancement under state law
     fails to state a federal question).

1    Petitioner also raised his claim regarding trial severance in his subsequently filed state

2    habeas petition.  The California Superior Court rejected the claim on procedural grounds and on

3    the merits, reasoning as follows:

> The claim is procedurally barred as it was raised and rejected on
> appeal (*Waltreus, supra*), and petitioner shows no exception to that
> bar.  Nor does petitioner set forth any reason why this court should
> conclude any differently than did the third District on the appeal,
> even if the claim were not barred, as petitioner and his codefendant
> acted together in committing the crimes and petitioner was the
> actual shooter, rendering all the evidence introduced as relevant to
> both petitioner and codefendant.

9    ECF No. 16-2 at 5.

10    A court may grant habeas relief based on a state court's decision to deny a motion for

11   severance only if the joint trial was so prejudicial that it denied a petitioner his right to a fair trial.

12   *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (court must decide if "there is a serious risk

13   that a joint trial would compromise a specific trial right of one of the defendants, or prevent the

14   jury from making a reliable judgment about guilt or innocence").  Petitioner bears the burden of

15   proving that the denial of severance rendered his trial fundamentally unfair,  *Grisby v. Blodgett*,

16   130 F.3d 365, 370 (9th Cir. 1997), and must establish that prejudice arising from the failure to

17   grant a severance was so "clear, manifest, and undue" that he was denied a fair trial.  *Lambright*

18   *v. Stewart*, 191 F.3d 1181, 1185 (9th Cir. 1999) (quoting *United States v. Throckmorton*, 87 F.3d

19   1069, 1071-72 (9th Cir. 1996)).

20    On habeas review, federal courts neither depend on the state law governing severance,

21   *Grisby*, 130 F.3d at 370 (citing *Hollins v. Dep't of Corrections, State of Iowa*, 969 F.2d 606, 608

22   (8th Cir. 1992)), nor consider procedural rights to a severance afforded to criminal defendants in

23   the federal criminal justice system.  *Id.*  Rather, the relevant question is whether the state

24   proceedings satisfied due process.  *Id.*; *see also Cooper v. McGrath*, 314 F. Supp. 2d 967, 983

25   (N.D. Cal. 2004).

26    Petitioner's claim in this regard involves essentially the same considerations as the two

27   claims discussed above.  The outcome is dependent on the level of prejudice to petitioner

28   resulting from the introduction of gang-related evidence to support the charges against petitioner

1    and Taylor.  For the reasons discussed above and in the opinions of the California courts with

2    respect to these claims, the trial court did not violate petitioner's right to due process in failing to

3    sever his trial from Taylor's trial.  The evidence of gang affiliation would almost certainly have

4    been admitted in a separate trial in order to explain the context in which the shooting occurred

5    and all of the parties' possible motivations in acting as they did.  In light of this, petitioner did not

6    suffer undue prejudice from the joinder of his trial with Taylor's.

7         The decisions of the California Court of Appeal and California Superior Court with

8    respect to this claim are not contrary to or an unreasonable application of United States Supreme

9    Court authority.  Accordingly, petitioner is not entitled to federal habeas relief.

10        **D.  Prosecutorial Misconduct**

11        In petitioner's next two grounds for relief, he claims that the prosecutor committed

12   prejudicial misconduct in closing argument.  After setting forth the applicable legal principles, the

13   court will address these claims in turn below.

14        **1.  <u>Applicable Legal Principles</u>**

15        A criminal defendant's due process rights are violated when a prosecutor's misconduct

16   renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986);

17   *Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000).  However, misconduct does not, per se,

18   violate a petitioner's constitutional rights.  *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993)

19   (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.

20   1987)).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is

21   the fairness of the trial, not the culpability of the prosecutor."  *Trillo v. Biter*, 754 F.3d 1085, 1090

22   (9th Cir. 2014) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  Prosecutorial misconduct

23   violates due process when it has a "substantial and injurious effect or influence in determining the

24   jury's verdict."  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (quoting *O'Neal

25   v. McAninch*, 513 U.S. 432, 443 (1995)).  It is the petitioner's burden to state facts that point to a

26   real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420

27   (9th Cir. 1990).

28   /////

1    In considering claims of prosecutorial misconduct involving allegations of improper

2    argument, the court must examine the likely effect of the statements in the context in which they

3    were made and determine whether the comments so infected the trial with unfairness as to render

4    the resulting conviction a denial of due process.  *Darden*, 477 U.S. at 181-83; *Donnelly v.*

5    *DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).

6    In fashioning closing arguments, prosecutors are allowed "reasonably wide latitude," *United*

7    *States v. Birges*, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue "reasonable

8    inferences from the evidence," *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989).  *See*

9    *also Ducket v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995).  "[Prosecutors] may strike 'hard

10   blows,' based upon the testimony and its inferences, although they may not, of course, employ

11   argument which could be fairly characterized as foul or unfair."  *United States v. Gorostiza*, 468

12   F.2d 915, 916 (9th Cir. 1972).  "[I]t 'is not enough that the prosecutors' remarks were undesirable

13   or even universally condemned.'"  *Darden*, 477 U.S. at 181 (citation omitted).  The issue is

14   whether the "remarks, in the context of the entire trial, were sufficiently prejudicial to violate

15   [petitioner's] due process rights."  *Donnelly*, 416 U.S. at 639.  However, "[a]s a general rule, a

16   prosecutor may not express his opinion of the defendant's guilt."  *United States v. Molina*, 923

17   F.2d 1440, 1444 (9th Cir. 1991).

18   It is improper for a prosecutor to vouch for the credibility of a government witness.

19   *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002).  *See also United States v.*

20   *Young*, 470 U.S. 1, 7 n.3 (1985).  "Vouching occurs when a prosecutor 'place[s] the prestige of

21   the government behind the witness or . . . indicate[s] that information not presented to the jury

22   supports the witness's testimony."  *United States v. Rangel-Guzman* , 752 F.3d 1222, 1224 (9th

23   Cir. 2014) (quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)); *United States v.*

24   *Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (same).  "Vouching typically involves the

25   prosecution bolstering the testimony of its own witness."  *United States v. Wright*, 625 F.3d 583,

26   610 (9th Cir. 2010) (quoting *United States v. Nobari*, 574 F.3d 1065, 1078 (9th Cir. 2009)).

27   /////

28   /////

22

1    Vouching is "especially problematic in cases where the credibility of the witness is crucial."

2    *Necoechea*, 986 F.2d at 1276.  Errors in allowing vouching are subject to harmless error analysis.

3    *United States v. Young*, 470 U.S. 1, 13 n.10 (1985).

4                    **2.  Prosecutor's Opinion as to Petitioner's Guilt**

5            Petitioner claims that the prosecutor improperly expressed his personal opinion of

6    petitioner's guilt when he informed the jurors that in order to "do the right thing," they should

7    convict petitioner of the charged crimes.  ECF No. 10 at 39-40.  Petitioner specifically points to

8    the following portions of the prosecutor's closing argument:

9            This is probably the first time that defendants are being prosecuted
             for a shooting that takes place in their own apartment, and you kind
10           of have to ask yourself why?  What is so compelling about this case
             that has brought us all here today?  Why are we prosecuting these
11           two individuals?

12           One thing that I was asking of you when we were picking you as a
             jury is to use your common sense.  Pretty soon after you guys do
13           your work in the deliberation room and you are done with this case,
             the Judge is going to lift the admonition that he has reminded you
14           guys of on every break and at every evening, and you will finally be
             able to go and tell your friends and your family and your loved ones
15           about this case because they are going to want to know where have
             you guys been for the past two months, and so you are finally going
16           to get to talk about it and you are going to tell your friends a little
             bit about this case.
17
                                    * * *
18
             You might have to explain the concept of self-defense and this
19           concept of if you are the initial aggressor, you don't get it.  And
             then what are your friends going to say?  You are going to tell them
20           all that you and your friends are going to say well, tell me that you
             convicted.  Because that's the right thing to do in this case, and
21           that's why we are charging these defendants.

22   RT at 1558-59.

23           Petitioner argues, "the prosecution telling the jurors to convict petitioner, because he's

24   being charged, and is therefore guilty, and if they want to do the right thing by their family,

25   violated petitioner's constitutional rights."  ECF No. 10 at 40.  He contends that the prosecutor's

26   remarks were essentially an expression of his personal belief that petitioner was guilty of the

27   charged crimes.  *Id.*  He argues that the prosecutor's argument improperly urged the jurors to

28   convict him of the charged crimes based on emotional factors that had nothing to do with the

                                          23

1   evidence introduced at trial.  ECF No. 20 at 15.  Petitioner also argues that he suffered prejudice

2   from the prosecutor's improper argument because: (1) this was a "close case;" (2) substantial

3   evidence showed petitioner acted "in a reasonable manner defending himself from the vigilante

4   acts of O'Neal;" and (3) O'Neal's explanation of his actions was "inconsistent."  ECF No. 10 at

5   40.  In the traverse, petitioner argues that his trial and appellate counsel rendered ineffective

6   assistance in failing to object to these comments by the prosecutor.  ECF No. 20 at 15

7          Petitioner raised this claim in his habeas petition filed in the California Superior Court.

8   The Superior Court rejected petitioner's arguments, reasoning as follows:

9              Petitioner next claims that the prosecutor committed misconduct by
               expressing a personal belief that petitioner was guilty.  Petitioner
10             gives an example of the prosecutor arguing to the jury that they
               were all there at the trial because the case was compelling, and that
11             the jurors should convict because it is the right thing to do in this
               case and is why petitioner was being charged.
12

13             A claim is procedurally barred on state habeas corpus when the
               claim could have been, but was not, raised on appeal (*In re Dixon*,
14             (1953) 41 Cal.2d 756, *reaffirmed in In re Harris, supra*).  The only
               exceptions to this procedural bar are those applicable to *Waltreus,*
15             *supra*; petitioner does not show that this claim qualifies for any of
               these exceptions.

16             Regardless, even assuming that the prosecutor's argument was
               error, which this court need not decide, petitioner fails to show
17             prejudice, due to the strength of the evidence.  As such, the claim
               fails (*Bower, supra*).
18

19   ECF No. 16-2 at 5.

20          Respondent argues that the California Supreme Court's citation to *In re Dixon* constitutes

21   a state procedural bar which precludes this court from addressing the merits of this claim of

22   ineffective assistance of counsel.  ECF No. 16 at 12.

23          As a general rule, "[a] federal habeas court will not review a claim rejected by a state

24   court 'if the decision of [the state] court rests on a state law ground that is independent of the

25   federal question and adequate to support the judgment.'"  *Walker v. Martin*, 562 U.S.___, ___,

26   131 S.Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler*, 558 U.S. ___, ___, 130 S. Ct. 612, 615

27   (2009)).  *See also Maples v. Thomas*, ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); *Greenway v.*

28   *Schriro*, 653 F.3d 790, 797 (9th Cir. 2011); *Calderon v. United States District Court (Bean)*, 96

1    F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

2    However, a reviewing court need not invariably resolve the question of procedural default prior to

3    ruling on the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also*

4    *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002): ("Procedural bar issues are not

5    infrequently more complex than the merits issues presented by the appeal, so it may well make

6    sense in some instances to proceed to the merits if the result will be the same"); *Busby v. Dretke*,

7    359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default should

8    ordinarily be considered first, a reviewing court need not do so invariably, especially when the

9    issue turns on difficult questions of state law).  Thus, where deciding the merits of a claim proves

10   to be less complicated and less time-consuming than adjudicating the issue of procedural default,

11   a court may exercise discretion in its management of the case to reject the claims on their merits

12   and forgo an analysis of procedural default.  *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th

13   Cir. 1998); *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir.1982).  Under the circumstances

14   presented here, the claim of prosecutorial misconduct here can be resolved more easily by

15   addressing it on the merits.  Accordingly, this court will assume that this claim is not defaulted

16   and will address it on the merits.

17            The prosecutor's closing argument, wherein he urged the jurors to find petitioner guilty

18   because it was the "right thing to do," did not render petitioner's trial fundamentally unfair.  The

19   prosecutor did not misstate any evidence or implicate important constitutional rights, nor did he

20   express his personal belief that petitioner was guilty.  *See Darden*, 477 U.S. at 181 n.12

21   (prosecutorial closing argument did not deprive petitioner of a fair trial where it "did not

22   manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such

23   as the right to counsel or the right to remain silent").  *Cf. United States v. Young*, 470 U.S. 1, 16

24   (1985) (prosecutor's argument during rebuttal in which he stated his opinion that the defendant

25   was guilty constituted error but did not unfairly prejudice the jury); *United States v. Bess*, 593

26   F.2d 749 (6th Cir. 1979) (prosecutor's statement to the effect that the United States would not

27   have indicted defendant if it had not believed he was guilty and that he personally believed

28   beyond a reasonable doubt that defendant was guilty amounted to reversible error where case was

close and credibility was the key issue).  The idea that the prosecution has charged a person with a crime because it believes this is the right thing to do is hardly novel.  In any event, the trial court instructed the jurors that their decision was to be made on the basis of the evidence alone, that the arguments of counsel were not evidence, and that they were not to be influenced by sympathy or prejudice.  Clerk's Transcript on Appeal (CT) at 771, 774.  Considering the record as a whole, this court concludes there is no reasonable possibility the prosecutor's remarks could have had a substantial and injurious effect or influence on the verdict in this case.  Accordingly, petitioner is not entitled to relief on this claim of prosecutorial misconduct.

Petitioner has also failed to demonstrate that his trial and appellate counsel rendered ineffective assistance in failing to object to the prosecutor's closing remarks.  A trial attorney's failure to object to a prosecutor's closing argument, unless the argument grossly mischaracterizes the record, does not constitute ineffective assistance of counsel.  *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013); *Necoechea*, 986 F.2d at 1276; *United States v. Daas*, 198 F.3d 1167, 1179 (9th Cir. 1999).  The prosecutor's statements in this case did not mischaracterize the record, nor did they render petitioner's trial fundamentally unfair.  Under these circumstances, petitioner's trial counsel did not provide ineffective assistance in failing to object.  Nor did petitioner's appellate counsel render ineffective assistance in failing to raise this claim on appeal.  For the reasons discussed above, there is no reasonable probability petitioner would have prevailed on appeal on this issue.  Accordingly, petitioner is not entitled to relief on these claims.

### 3. <u>Vouching for the Credibility of O'Neal</u>

In the traverse, petitioner argues that the prosecutor committed misconduct in closing argument by vouching for the veracity and credibility of O'Neal.  ECF No. 20 at 14.  He specifically objects to the following remarks by the prosecutor:

> One thing that you might be thinking is well, hey, Triplett [the prosecutor], what about Alfred O'Neal?  What about, you know, him shooting?  Well, let me just tell you this: That is not before you.  That issue is not for you guys to consider.  That is not something before you.  Your focus for being jurors in this case is on these two men.  Were they legally justified in firing at the victims and in hitting the victims?

RT at 1430-31.

One question, like I said this morning, that is not before you, is whether or not Mr. O'Neal is going to get prosecuted. The likely answer to that is no. Would a jury convict him and what would they convict him of?

So, is Mr. O'Neal going to get prosecuted? Probably not, just tell you that right now. And you have to ask yourselves, you've sat through this process and you have seen how the defense would go about defending him in that case under the facts that you know him, and the likely outcome of that is there would be no jury anywhere that would convict him. Maybe of, you know, possession of a firearm. Yeah, maybe so, but anything that occurred in the apartment, probably not. So again, that question is not before you.

*Id.* at 1557.

Petitioner raised this claim of prosecutorial misconduct on direct appeal. Resp't's Lodg.

Doc. 2 at 95-100. The California Court of Appeal denied the claim, reasoning as follows:

Defendants contend the prosecutor committed misconduct in closing argument by vouching for O'Neal's veracity as follows:

"One question, like I said this morning, that is not before you, is whether or not Mr. O'Neal is going to get prosecuted. The likely answer to that is 'no.' Would a jury convict him and what would they convict him of? [¶] So, is Mr. O'Neal going to get prosecuted? Probably not, just tell you that right now."

Defendants rely on cases in which the prosecutor argued something like, "'he would not prosecute any man he did not believe to be guilty.'" (*People v. Kirkes* (1952) 39 Cal.2d 719, 723–724 (*Kirkes*); *People v. Edgar* (1917) 34 Cal.App. 459, 467–468.)

We reject defendants' contention for three reasons.

First, defendants failed to object to the challenged argument, which they were required to do to make this misconduct claim. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Second, defendants have taken the prosecutor's remarks out of context. Those remarks were made in the context of the following summation: "Something else to throw out there that you might be wrestling with here, you might not like what Alfred O'Neal did in this case. That's okay. This might be the one case where nobody is entitled to self-defense. It could be that case, but that does not take away from the crux of the case. Were the defendants legally justified in shooting Alfred O'Neal and [Richard]? So if nobody is entitled to self-defense, then the answer to that is 'no, you guys weren't entitled to do that.'"

And, third, the prosecutor's "hedging" about the prosecution of O'Neal was not as egregious as the definitive personal vouching in *Kirkes* and *Edgar*. (*See Kirkes, supra,* 39 Cal.2d at pp. 723–724.)

27

1

> Alternatively, defendants claim their counsel rendered ineffective
> assistance by failing to object to the challenged prosecutorial
> remarks.  To succeed with this claim, however, defendants must
> have been prejudiced.  (*People v. Anderson* (2001) 25 Cal.4th 543,
> 569.)  Coupling the reasons we just noted with the evidence in this
> case, we find no prejudice.

2

3

4

5    ECF No. 16-1 at 19-21.

6        Petitioner raised this claim of prosecutorial misconduct again in his habeas petition filed

7    in the California Superior Court.  The Superior Court denied the claim, reasoning as follows:

8

> Petitioner next claims that the prosecutor committed error by
> vouching for the credibility of a crucial immunized witness, and
> that trial defense counsel was ineffective in failing to object.
> Petitioner gives examples of alleged vouching for the credibility of
> both victim-witnesses Richard and O'Neal.

9

10

11

> With regard to alleged vouching for the credibility of victim-
> witness O'Neal, the claim is barred as having been raised and
> rejected on appeal (*Waltreus, supra*).   Petitioner shows no
> exception to that bar and fails to set forth any reason why this court
> should conclude any differently than did the Third District on the
> appeal even if the claim were not barred.

12

13

14

15   ECF No. 16-2 at 5.

16       As set forth above, the California Court of Appeal concluded that petitioner forfeited this

17   claim of prosecutorial misconduct by failing to make a contemporaneous objection to the

18   prosecutor's statements.  Respondent argues that the state court's finding of waiver constitutes a

19   state procedural bar precluding this court from addressing the merits of the claim.  ECF No. 16 at

20   10-11.

21       As explained above, state courts may decline to review a claim based on a procedural

22   default and will generally not review a question of federal law decided by a state court if the

23   decision of that court rests on a state law ground that is independent of the federal question and

24   adequate to support the judgment.  *Martin*, 131 S. Ct. at 1127.  A state rule is only "adequate" if it

25   is "firmly established and regularly followed."  *Bean*, 96 F.3d at 1129 (quoting *Ford v. Georgia*,

26   498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be

27   deemed adequate, the state law ground for decision must be well-established and consistently

28   applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal

28

1   law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463

2   U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may

3   be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the

4   alleged violation of federal law; or (2) that failure to consider the claims will result in a

5   fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.

6          Respondent has met his burden of adequately pleading an independent and adequate state

7   procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

8   deny that his trial counsel did not raise a contemporaneous objection to the prosecutor's closing

9   remarks about O'Neal.  Although the state appellate court addressed petitioner's claim of

10  prosecutorial misconduct on the merits, it also expressly held that the claim was waived on appeal

11  because of defense counsel's failure to object.  Petitioner has failed to meet his burden of

12  asserting specific factual allegations that demonstrate the inadequacy of California's

13  contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either

14  as a general rule or as applied to him.  *Bennett*,  322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d

15  1120, 1124-26 (9th Cir. 2002).  Petitioner's claim therefore appears to be procedurally barred.

16  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*,

17  371 F.3d 1083, 1092-93 (9th Cir. 2004).

18         Even if petitioner's claim of prosecutorial misconduct is not procedurally barred, it lacks

19  merit.  As noted by the California Court of Appeal, read in the context of the entire closing

20  argument the prosecutor was arguing that it was debatable whether any of the participants in the

21  shooting could legitimately claim they were acting in self-defense.  He conceded that the jury

22  "might not like" what O'Neal did in this case.  Although he indicated that O'Neal would not

23  likely be prosecuted for his actions, he acknowledged that O'Neal's behavior could also give rise

24  to possible prosecution.  The prosecutor was not going so far as to argue that O'Neal's testimony

25  was entirely credible, that his actions were lawful, or that he had any extra-record knowledge of

26  O'Neal's veracity.  *See Necoechea*, 986 F.2d at  1278 (among the factors a court must consider in

27  determining whether there was vouching is "how much the vouching implies that the prosecutor

28  has extra-record knowledge of or the capacity to monitor the witness's truthfulness").  He was

1    simply asking the jurors to view the actions of the defendants without regard to the criminal

2    culpability of O'Neal.

3          Under the circumstances presented here, a reasonable jurist could conclude that the

4    prosecutor's remarks did not undermine the fundamental fairness of petitioner's trial or contribute

5    to a miscarriage of justice. *Darden*, 477 U.S. at 179-82. *But cf. United States v. McKoy*, 771

6    F.2d 1207, 1210 (9th Cir. 1985) (prosecutor's statements that he believed he had an "extremely

7    strong case" against defendants constituted impermissible vouching).  For this reason, the

8    decision of the California Court of Appeal and California Superior Court denying this claim of

9    prosecutorial misconduct is not contrary to or an unreasonable application of federal law, as

10   determined by the Supreme Court of the United States.  Accordingly, petitioner is not entitled to

11   federal habeas relief on this claim.

12          **E.  Cumulative Error**

13          In his final ground for relief, petitioner claims that the cumulative effect of the errors

14   complained of above violated his right to due process and a fair trial.  ECF No. 10 at 41-42.  He

15   argues that these errors "ultimately had a substantial and injurious effect on the jury's verdict."

16   *Id.* at 41.

17          The California Court of Appeal rejected these arguments, reasoning as follows:

18                 Finally, we reject Buckley's claim of cumulative error, in light of
19                 what we have said regarding his claims of individual error.

20   ECF No. 16-1 at 21.  Petitioner raised this claim again in his habeas petition filed in the

21   California Superior Court.  The Superior Court denied the claim as well, with the following

22   reasoning:

23                 Insofar as the claim is based on claims raised and rejected on
                   appeal, the claim is barred under *Waltreus*.  And, the claim fails on
24                 its merits in any event, as petitioner has not demonstrated any
                   prejudicial error, nor does he demonstrate that any cumulative error
25                 was prejudicial.

26   ECF No. 16-2 at 6.

27          The cumulative error doctrine in habeas recognizes that, "even if no single error were

28   prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless

1  be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002)

2  (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).  However, where there is no

3  single constitutional error existing, nothing can accumulate to the level of a constitutional

4  violation.  *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) ("[B]ecause we hold that

5  none of Fairbank's claims rise to the level of constitutional error, 'there is nothing to accumulate

6  to a level of a constitutional violation.'") (citation omitted); *Hayes v. Ayers*, 632 F.3d 500, 524

7  (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no

8  cumulative prejudice is possible.").  "The fundamental question in determining whether the

9  combined effect of trial errors violated a defendant's due process rights is whether the errors

10  rendered the criminal defense 'far less persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294

11  (1973), and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

12  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S.

13  619, 637 (1993)).

14        This court has addressed petitioner's claims of error and has concluded that no error of

15  constitutional magnitude occurred.  There is also no evidence that an accumulation of errors

16  rendered petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on

17  his claim that cumulative error violated his right to due process.

18  **IV. Conclusion**

19        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

20  application for a writ of habeas corpus be denied.

21        These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within fourteen days after service of the objections.  Failure to file

27  objections within the specified time may waive the right to appeal the District Court's order.

28  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

1    1991).  In his objections petitioner may address whether a certificate of appealability should issue

2    in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

3    2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

4    final order adverse to the applicant).

5    DATED:  May 5, 2015.

6                                    EDMUND F. BRENNAN

7                                    UNITED STATES MAGISTRATE JUDGE

32